KERSTIN SWENSSON, Appellant, *v.* NEW YORK, ALBANY DESPATCH COMPANY, INC., Defendant, and WARD LA FRANCE TRUCK CORP., Respondent.

YOLANDA TRIMBOLI, as Administratrix of the Estate of ANTHONY J. TRIMBOLI, Deceased, Appellant, *v.* WARD LA FRANCE TRUCK CORP., Respondent.

Argued October 11, 1955; decided January 12, 1956.

*Isadore B. Hurwitz* and *Solomon Feldman* for Kerstin Swensson, appellant. I. A prima facie case of negligence and causation was proved. (*Didinger* v. *Pennsylvania R. R. Co.,* 39 F. 2d 798; *Piwowarski* v. *Cornwell,* 273 N. Y. 226; *Palsgraf* v. *Long Is. R. R. Co.,* 248 N. Y. 339; *MacPherson* v. *Buick Motor Co.,* 217 N. Y. 382; *Van Dorn* v. *Jackson Auto Sales,* 258 App. Div. 745, 283 N. Y. 628; *Jones* v. *Raney Chevrolet Co.,* 217 N. C. 639; *Egan Chevrolet Co.* v. *Bruner,* 102 F. 2d 373; *Oliver* v. *Bereano,* 267 App. Div. 747, 293 N. Y. 931; *Betzag* v. *Gulf Oil Corp.,* 298 N. Y. 358; *Noseworthy* v. *City of New York,* 298 N. Y. 76.) II. The declarations of the deceased driver testified to by Miss Swensson, to the effect that the brakes were not functioning, were properly admitted as part of the *res gestae.* III. The maxim *res ipsa loquitur* is applicable to this case. Hence, a prima facie case for the jury to pass upon was made out. (*Galbraith* v. *Busch,* 267 N. Y. 230.) IV. The trial court erroneously excluded appellant's expert witness' testimony concerning an inspection of the mechanism made five days after the happening of the accident. (*McCulloch* v. *Dobson,* 133 N. Y. 114; *Mironchik* v. *Sagadahoc S. S. Corp.,* 255 N. Y. 81; *Peil* v. *Reinhart,* 127 N. Y. 381; *Dydkiewicz* v. *Unterberg Realty Corp.,* 222 App. Div. 485; *Mansfield* v. *City of New York,* 119 App. Div. 199.)

*Bernard Meyerson, Solomon Z. Ferziger* and *Irving D. Josefsberg* for Yolanda Trimboli, appellant. I. There is ample testimony to support the verdict rendered in favor of plaintiff administratrix at Trial Term. (*Peters* v. *New York Bd. of Fire Underwriters,* 276 App. Div. 846; *Garrow* v. *State of New York,* 268 App. Div. 534, 294 N. Y. 741; *Trimble* v. *City of New York,* 275 App. Div. 169; *Noseworthy* v. *City of New York,* 298 N. Y. 76.) II. The duty of defendant to see that its tractor was equipped with proper brakes was absolute. (*Donovan* v. *Garvas,*

121 Misc. 24; *Oliver* v. *Bereano,* 267 App. Div. 747, 293 N. Y. 931; *Van Dorn* v. *Jackson Auto Sales,* 283 N. Y. 628; *Elfeld* v. *Burkham Auto Renting Corp.,* 299 N. Y. 336.) III. Defendant's counsel took no exception to the charge so they must concede that the charge is the law of the case. (*Saulsbury* v. *Braun,* 223 App. Div. 555, 249 N. Y. 618.) IV. The statements of deceased were properly admitted in evidence as part of the *res gestae.* (*People* v. *Del Vermo,* 192 N. Y. 470; *Martin* v. *New York, N. H. & H. R. R. Co.,* 103 N. Y. 626; *People* v. *Sprague,* 217 N. Y. 373.) V. There was sufficient evidence to support the verdict and the Appellate Division erred when it dismissed the complaint. (*Piwowarski* v. *Cornwell,* 273 N. Y. 226; *Ingersoll* v. *Liberty Bank of Buffalo,* 278 N. Y. 1; *White* v. *Lehigh Valley R. R. Co.,* 220 N. Y. 131; *Sagorsky* v. *Malyon,* 307 N. Y. 584; *Stein* v. *Palisi,* 308 N. Y. 293.)

*John V. Downey, Luke A. Burke, Thomas F. Cohalan, Eugene J. Smith* and *John W. Collopy, Jr.,* for respondent. I. Both plaintiffs failed to prove the allegations of their complaints that the brakes of the tractor were defective. II. The evidence by plaintiff Swensson was hearsay. It was not part of the *res gestae* and was, therefore, inadmissible. (*Ingersoll* v. *Liberty Bank of Buffalo,* 278 N. Y. 1; *Handel* v. *New York R. T. Corp.,* 252 App. Div. 142, 277 N. Y. 548; *Waldele* v. *New York Central & H. R. R. R. Co.,* 95 N. Y. 274; *Greener* v. *General Elec. Co.,* 209 N. Y. 135.) III. The Appellate Division properly dismissed both of plaintiffs' complaints in the court below. (*Higgins* v. *Mason,* 255 N. Y. 104; *Meitzler* v. *Hill,* 233 App. Div. 503; *Lahr* v. *Tirrill,* 274 N. Y. 112; *Malament* v. *Lidsky,* 283 App. Div. 135; *Bottalico* v. *City of New York,* 281 App. Div. 339.)

FROESSEL, J. Plaintiffs in these consolidated actions have recovered a judgment against defendant Ward La France Truck Corp., hereinafter called Ward. The Appellate Division by a divided court has reversed the judgment and dismissed the complaints, two of the Justices voting for a new trial. The majority noted that, if they were not dismissing the complaints, they too would have granted a new trial upon the ground that the verdict was contrary to the weight of the credible evidence.

On this appeal, then, we need only consider whether plaintiffs have established a prima facie case under the law as stated

by the Trial Judge. Since no exception was taken to the charge, it became the law of the case (*Leonard* v. *Home Owners' Loan Corp.*, 297 N. Y. 103, 104; *Buckin* v. *Long Is. R. R. Co.*, 286 N. Y. 146, 149; *Saulsbury* v. *Braun*, 223 App. Div. 555, affd. 249 N. Y. 618). If a prima facie case has been made out, the Appellate Division was without power to dismiss the complaint (*Sagorsky* v. *Malyon*, 307 N. Y. 584, 586; *Scantlebury* v. *Lehman*, 280 App. Div. 978, affd. 305 N. Y. 713).

Upon this record, the jury was entitled to find the following facts: On the afternoon of October 23, 1952, a Diamond T tractor, Model 660, was delivered by Ward to the defendant New York, Albany Despatch Company, Inc., hereinafter called Albany Despatch, which latter defendant the jury exonerated. The tractor was not new, having been repossessed by Ward earlier that month. At that time it had been driven approximately 18,000 miles. The tractor was lent by Ward to Albany Despatch for demonstration purposes, to be taken on a trial run to Plattsburgh, New York, and return, with a view to its purchase by the latter if it proved satisfactory. Thus the very purpose of this trip was to ascertain if the tractor was in good condition after such a run. It had just been reconditioned by Ward, and, according to its secretary, " the truck was put in perfect shape ".

On the same day, Albany Despatch instructed its employee Anthony Trimboli to take the tractor with a loaded trailer attached on an overnight trip to Plattsburgh. Trimboli called plaintiff Kerstin Swensson and asked her if she would like to ride upstate with him for a few hours. She agreed and rode with him all night until the tractor and trailer approached Plattsburgh early the next morning. Miss Swensson stopped at a house where she engaged a room in her own name, and went to sleep, while Trimboli proceeded a little further into Plattsburgh, and someone else drove the tractor and trailer to Saranac Lake and return. They again met and left Plattsburgh between 6:00 P.M. and 7:00 P.M. the same evening, riding in the same tractor which was now attached to a different trailer.

Approximately three hours later, while traveling at about 45 miles per hour, the tractor and trailer proceeded down a slight incline in the road. At this point the road curved slightly to the right. Trimboli attempted to put on the brakes and told

Miss Swensson that "the air was gone", and that the regular brakes did not work either. The tractor and trailer, which according to a disinterested witness were "going along in a straight line", then went off the road and overturned. As a result, Trimboli died in the crash and Miss Swensson, who was pinned in the tractor for four hours, suffered very serious injuries.

The trial court, in a careful, detailed and comprehensive charge, to which no exceptions were taken, submitted the case to the jury on the theory of the driver's negligence and on the theory of defective brakes. Then with reference to respondent Ward herein, the court, pursuant to said respondent's request, charged the jury that " to find the defendant Ward La France liable they must find that it furnished or supplied to New York and Albany Despatch an unsafe vehicle with knowledge that it was unsafe or that by a reasonable inspection it should have known that it was not fit and safe for the purposes for which it was intended." The test for respondent's liability, absent plaintiff's contributory negligence, was stated to be: whether it acted as a person of ordinary prudence would have acted in using due care in the handling of the tractor in question with regard to the inspection made and with regard to its condition when delivered to Albany Despatch. If there was no defect, or if Ward acted prudently despite a defect in the brakes, the jury was told that Ward would not be liable. The jury specifically found for the plaintiffs on the theory that the tractor was defective and thus not properly inspected. In doing so they exonerated the driver of negligence. The jury deliberated almost eleven hours, meanwhile returning to the courtroom twice to ask pertinent intelligent questions that reflected a high sense of duty and understanding.

Thus we must determine whether plaintiffs' evidence presented facts and circumstances from which respondent's negligence, and the cause of the accident by that negligence, may be reasonably inferred (*Betzag* v. *Gulf Oil Corp.*, 298 N. Y. 358, 365), but plaintiffs were not required to offer evidence which positively excluded every other possible cause of the accident (*Rosenberg* v. *Schwartz*, 260 N. Y. 162, 166).

Plaintiff Trimboli's decedent died immediately in the accident, thus leaving Miss Swensson as the only person who could

testify as to what occurred. As to the death action, the plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence (*Noseworthy* v. *City of New York*, 298 N. Y. 76). Miss Swensson stated that as the tractor and trailer rounded the top of the hill and proceeded around the slight curve to the right and down the slight incline, it began to gather speed due to its own weight; the load alone weighed 22,000 pounds. The driver, Trimboli, as already noted, told her that " the air was gone ", and attempted to stop the tractor with a brake that he was manipulating with his left hand and with the regular foot brakes. He stated that the other brakes did not work either.

Respondent objected to the admission of Trimboli's statements about the brakes on the ground that they were hearsay and not part of the *res gestae*. There is no doubt that the statements were hearsay declarations, but they fall within a well-recognized exception to the hearsay rule: that spontaneous declarations which are part of the *res gestae* are admissible (*People* v. *Curtis*, 225 N. Y. 519; *People* v. *Del Vermo*, 192 N. Y. 470; *Scheir* v. *Quirin*, 77 App. Div. 624, affd. 177 N. Y. 568; Richardson on Evidence [8th ed.], § 263, pp. 241–242; 6 Wigmore on Evidence [3d ed.], §§ 1745–1750).

In *People* v. *Curtis* (*supra*, p. 522), the rule was stated thus: " The admission in evidence of the declarations of an injured person constitutes an exception to the general rule that excludes hearsay evidence, and is justified when the declarations are so spontaneous or natural as to exclude the idea of fabrication." And in *Scheir* v. *Quirin* (*supra*), decedent fell into a vat of boiling liquid, then ran in intense pain into a boiler house about 60 or 70 feet away, and spontaneously cried out: " Oh, George, I am scalded, the plank slipped off and throwed me in." No one saw the accident. It was held (pp. 628–629): " In order to make a declaration of this kind competent it seems to be settled that it must bear a close relation to the principal transaction and that it must be a spontaneous exclamation, an outburst of the feelings, and not a mere narration of a past event."

This case is almost a classic example of *res gestae*. Here the decedent made the spontaneous statement in the course of, and within ten seconds of the final happening of, the startling event itself, it related to the circumstances of the event, and was made

before he had either time, opportunity or inclination to fabricate. This distinguishes it from the cases cited by respondent, each of which held the statement to be one of a past narrative, and therefore inadmissible; in these same cases, the rule as applied by the trial court here is definitely recognized. As, for example, we said in *Greener* v. *General Elec. Co.* (209 N. Y. 135, 138): " The distinction to be made is in the character of the declaration; whether it be so spontaneous, or natural, an utterance as to exclude the idea of fabrication; or whether it be in the nature of a narrative of what had occurred."

It thus appears that the statements made by Trimboli came clearly within the rule, and were therefore properly admitted as part of the *res gestae*. It may be noted in passing that plaintiff Swensson reported these statements in the hospital emergency room promptly upon her admission, and before having any counsel. It will be recalled that she also testified Trimboli had been lawfully driving 45 miles per hour, and that she observed him trying to use the foot and hand brakes simultaneously with his declaration that they did not work, and that, notwithstanding, the truck gained speed and went off the road.

In addition, plaintiffs introduced unrefuted expert testimony to the effect that although brake linings can be seen through a peephole, this is not good practice for inspecting them. The expert also testified that a brake drum could not be inspected through a peephole, but that it had to be removed, and that the only proper way to inspect brakes is to pull off the wheels and examine their parts. In answer to a hypothetical question, he stated that, under the circumstances of this accident, the tractor and trailer should have stopped within 15 to 20 feet if the brakes were working properly. We should keep in mind here that defendant Ward was a distributor of these tractors, and had " reconditioned " this tractor; it was not the ordinary second-hand car dealer.

Moreover, Louis La Mothe, a mechanic employed by respondent, testified that he inspected the truck involved in October, 1952, and found the brakes working properly. But, while he stated that he looked at the brake linings only through the peepholes, he had previously testified on an examination before trial as follows: " What inspection did you make of the brake lining? " Answer: " None." He also admitted that he did

not examine the brake drums. Finally, there is the testimony of the eyewitness to the accident, who stated that the truck was going in a straight line after it reached the top of the hill and was not going from one side of the road to the other, which might be indicative of careless driving.

Of course there was evidence showing that the brakes were operating efficiently prior to the accident, which the Appellate Division outlined " As against " the plaintiffs' evidence. Only a jury is constitutionally endowed with the right to pass on conflicting evidence, as well as the credibility of witnesses (*Piwowarski* v. *Cornwell,* 273 N. Y. 226, 229).

Despite the evidence tending to show that the brakes were operating properly before the accident, we certainly cannot say that " ' by no rational process ' could the jury have based a finding in favor of plaintiffs on the evidence here presented (*Blum* v. *Fresh Grown Preserve Corp.,* 292 N. Y. 241, 245–246)." (*Stein* v. *Palisi,* 308 N. Y. 293, 296.) Giving plaintiffs the benefit of every favorable inference which can reasonably be drawn from the facts (*Sagorsky* v. *Malyon,* 307 N. Y. 584, *supra*), the jury could have found that the accident was caused by defective brakes, and that respondent, a distributor of tractors, who had allegedly " reconditioned " this one and put it in " perfect shape ", did not use proper care in inspecting and reconditioning it. There is, in support of these findings, the evidence heretofore outlined.

The mere fact that a piece of machinery functioned properly on prior occasions does not mean that it was in good condition at the time of the accident. It had been on the road for over 18,000 miles. This and the trips to Paramus, New Jersey, Plattsburgh and Saranac Lake could well have weakened an otherwise readily observable defect in the brakes and finally caused this accident. We are therefore of the opinion that plaintiffs made out a prima facie case (*Oliver* v. *Bereano,* 267 App. Div. 747, affd. 293 N. Y. 931; see, also, *Elfeld* v. *Burkham Auto Renting Co.,* 299 N. Y. 336; *Van Dorn* v. *Jackson Auto Sales,* 283 N. Y. 628; *Jones* v. *Raney Chevrolet Co.,* 217 N. C. 693; *Egan Chevrolet Co.* v. *Bruner,* 102 F. 2d 373). The Appellate Division therefore had no power to dismiss the complaint, but should have ordered a new trial (*Sagorsky* v. *Malyon, supra*).

The judgment appealed from should be modified by providing for a new trial instead of the dismissal of plaintiffs' complaints, and, as so modified, affirmed, with costs to abide the event.

CONWAY, Ch. J., DESMOND, FULD and BURKE, JJ., concur with FROESSEL, J.; VAN VOORHIS, J., dissents and votes to affirm upon the ground that there is no evidence that the accident was caused by a defective brake drum; DYE, J., taking no part.

Judgment accordingly.